USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/28/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRISTOW US LLC,

         Plaintiff,

    -v-

WALLENIUS WILHELMSEN LOGISTICS, AS,

         Defendant.

---

18 Civ. 3504 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff Bristow US LLC ("Bristow") brings this maritime action against Wallenius Wilhelmsen Logistics AS ("Wallenius") for damage to a helicopter owned by Bristow incurred while the helicopter was being loaded onto one of Wallenius' cargo ships. Pending now is Wallenius' motion for partial summary judgment on the issue whether Bristow's damages are limited to $500 by the United States Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701 note (2006).[1] For the following reasons, the Court holds that COGSA's $500 limitation provision applies and grants Wallenius' motion for partial summary judgment.

**I. Background**

 **A. Factual Background[2]**

On or about April 17, 2017, Bristow contracted with Wallenius to transport an AW139 civil helicopter and accessories from Savannah, Georgia, to Melbourne, Australia. JSF ¶ 3.

---

[1] Both parties cite to COGSA at 46 U.S.C. §§ 1300 *et seq.* Former sections 46 U.S.C. § 1300 *et seq.* were recodified in the note of 46 U.S.C. § 30701 in 2006. The language of the provisions at issue remains identical.

[2] The Court draws its account of the underlying facts from the parties' joint statement of undisputed facts. Dkt. 20 ("JSF"). Because the facts relevant to this motion are not in dispute—the issue is one of application of law to undisputed facts—neither party submitted a Rule 56.1 statement.

1

Wallenius was responsible for loading the helicopter and accessories onto the ship and for its custody before, during, and after ocean transit. *Id.*

On or before April 27, 2017, the helicopter and accessories were received by Wallenius at the port of loading in Savannah, Georgia. *Id.* ¶ 6. Wallenius' subcontractors attempted to load one part of the shipment, the helicopter body, onto a ship, the M.V. TIJUCA, by pushing it up the Ro-Ro ramp of that ship using a tow bar provided by Bristow. *Id.* ¶ 7. Bristow alleges that the helicopter body was damaged in the course of this loading. *Id.*

The agreement to transport the helicopter and accessories was governed by Wallenius bill of lading No. US1734776. *Id.* ¶ 6. The description of the shipment on the bill of lading was prepared by Bristow. *Id.* ¶ 8. After the incident during loading aboard the M.V. TIJUCA, the bill of lading was amended to reflect carriage aboard the M.V. MORNING CINDY. *Id.*

### B. Procedural History

On April 20, 2018, Bristow filed the original complaint in this action. Dkt. 1. On May 2, 2018, Bristow filed an Amended Complaint correcting its name from Bristow Helicopters U.S. LLC to Bristow US LLC. Dkt. 7. On July 13, 2018, Wallenius answered. Dkt. 13.

On September 6, 2018, the Court held an initial pretrial conference. Having determined that the applicability of the COGSA limitation was a central issue, the Court, with the support of the parties, set a schedule for partial summary judgment limited to that issue. Dkt. 19.

On September 28, 2018,[3] the parties filed a Joint Statement of Stipulated Facts. Dkt. 23. On October 12, 2018, Wallenius filed a motion for partial summary judgment, Dkt. 27, and a memorandum of law in support, Dkt. 28 ("Def. Mem."). On October 26, 2018, Bristow

---

[3] Due to some clerical errors with the way the documents were electronically filed, the final docket entries do not accurately reflect the dates on which documents were originally submitted to the Court. The account in text reflects the dates on which the corresponding papers were originally filed.

submitted a memorandum of law in opposition. Dkt. 29 ("Pl. Mem."). On November 2, 2018, Wallenius replied. Dkt. 30 ("Def. Reply").

**II.      Applicable Law**

   **A.      Legal Standards Governing a Motion for Summary Judgment**

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

   **B.      Legal Standards Governing Liability for Packages Shipped Pursuant to COGSA**

COGSA governs loss or damage to goods carried by sea. *See* 46 U.S.C. § 30701 note § 13 (2006). Ordinarily, COGSA applies only to the period between loading and discharge of the vessel, or from "tackle to tackle." *See Norfolk S. Ry v. Kirby*, 543 U.S. 14, 29 (2004). Here, however, the parties agree that they contractually extended the relevant provisions of COGSA to cover the period of time before the vessel had been loaded, including when the damage to the helicopter allegedly occurred. *See* Pl. Mem. at 11.

The COGSA provision at issue concerns its $500 package or customary freight unit ("CFU") limitation. It reads:

> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if

3

embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

46 U.S.C. § 30701 note § 4(5) (2006).

## III. Discussion

Wallenius argues that the helicopter should be considered a "package" under COGSA or, in the alternative, if the helicopter were viewed as a "good[] not shipped in [a] package[]," a single CFU. Either way, Wallenius contends that COGSA limits Bristow's recovery from Wallenius for the damage sustained to the entire helicopter to $500. Bristow counters that the helicopter should be regarded not as a package or a single CFU but as a bundle of CFUs. Specifically, Bristow argues, the relevant CFU is the revenue ton, the unit used to calculate the helicopter's freight. Thus, Bristow argues, COGSA sets a liability limit measured by the number of revenue tons of the helicopter, multiplied by $500. Bristow represents, based on the bill of lading, that the helicopter is 196.657 revenue tons. Pl. Mem. at 12.

The Court concludes, with Wallenius, that regardless whether the helicopter is measured by package or by CFU, COGSA limits the damages sustained to it during loading to $500.

The initial question is whether the helicopter here qualifies a "package" under COGSA. On the facts at hand, this is not a conclusive call. Although "package" has an intuitive vernacular meaning, the Second Circuit has held that, under COGSA, "package" is a term of art. As used in COGSA, the term "package" can "be said to define a class of cargo, irrespective of size, shape, or weight, to which some packaging preparation for transportation has been made which facilitates handling, but which does not necessarily conceal or completely enclose the goods." *Aluminios Pozuelo Ltd. v. S. S. NAVIGATOR*, 407 F.2d 152, 155 (2d Cir. 1968).

When the parties have contractually defined the goods shipped as "package[s]," as often occurs on the bill of lading, there is a presumption that those goods constitute "package[s]" for

purposes of COGSA. *See Seguros v. Illimani S.A. v. M/V POPI P*, 929 F.2d 89, 94 (2d Cir. 1991). In *Seguros*, the Second Circuit held that a bill of lading column listing "NO. OF PKGS." unambiguously contemplated the shipped items (bundles of 600 steel ingots) as packages. *Id.* However, where the text of a bill of lading leaves unstated or ambiguous whether a shipped item is a "package," a court must "look elsewhere in the bill of lading and to other evidence of the parties' intentions." *Id.* Here, the relevant bill of lading column lists "No. of units *or* packages." JSF Ex. B (emphasis added). In other words, it does not commit between the two. It is therefore facially ambiguous as to whether the appropriate measure is a "unit," presumably a CFU, or a "package."

Some insight is yielded elsewhere in the bill of lading, which defines "[p]ackage." *See* JSF Ex. C. As used there, "'[p]ackage' means the largest means used to prepare cargo for transportation, including but not limited to, a skid, pallet, Container, trailer or carton." *Id.* Wallenius argues that the tow bar used to load the helicopter here is analogous to one of the listed means, namely a trailer, and that the helicopter should therefore be treated as a package. *See* Def. Mem. at 12–13. Bristow counters that the tow bar is not an "integral part of the cargo unit." Pl. Mem. at 14. Rather, Bristow argues, it is distinguishable from the listed means and more analogous to "a cargo hook or a forklift." *Id.*

As to the application of the term "package" here, Wallenius relies on *Insurance Company of North America v. M/V XIANG HE*, 89 Civ. 184 (MJL), 1990 WL 121587 (S.D.N.Y. Aug. 15, 1990). It held that a helicopter attached to an open flat rack container constituted a "package" under COGSA. But that case is readily distinguishable. The court there placed interpretive weight on the fact that the bill of lading listed the flat container to which the helicopter was

secured as the "Kind of Package( )." *Id.* at *344. The bill of lading here, in contrast, does not contain such language as to the tow bar.

More convincing is Wallenius' analogy to yachts on cradles. The phenomenon of the "dropped yacht"—in which a yacht, while being loaded or unloaded from a vessel, is dropped from its cradle and damaged—appears to present a recurrent COGSA problem. *See SNC S.L.B. v. M/V NEWARK BAY*, 111 F.3d 243, 244 n.1 (2d Cir. 1997) (collecting "dropped yacht" cases). In such cases, some courts have concluded that a yacht in a cradle constitutes a package. *See Royal Ins. Co. v. Sea-Land Service Inc.*, 50 F.3d 723, 727 (9th Cir. 1995) (yacht in a cradle included in definition of "package"); *Inst. of London Underwriters v. Sea-Land Serv., Inc.*, 881 F.2d 761, 768 (9th Cir. 1989) (same); *New Hampshire Ins. Co. v. Seaboard Marine, Ltd.*, No. 89-0255-CIV-RYSKAMP, 1992 WL 33861, at *2 n. 2 (S.D. Fl. Jan. 2, 1992) ("It is undisputed that the yacht constituted one 'package' for purposes of COGSA."). Others have held that a yacht in a cradle is subject to the $500 limitation under either a package or CFU analysis. *See SNC S.L.B.*, 111 F.3d at 247; *Miller Yacht Sales, Inc. v. M.V. VISHVA SHOBHA*, 494 F. Supp. 1005, 1015 (S.D.N.Y. 1980) ("[T]he yacht constituted one unit or package.").

Wallenius argues that because the tow bar was attached to facilitate the handling of the helicopter here, it is analogous to a cradle. *See* Def. Reply at 4. Bristow counters that a yacht in a cradle is distinguishable from the helicopter with the tow bar here because:

> [W]hen a yacht is shipped in a cradle, the cradle becomes an integral part of the cargo unit, it is used to fasten the yacht to a device so as to allow it to be loaded and placed aboard the vessel without the yacht tipping over on it's [sic] keel. The tow bar clearly does not serve the same purpose in this case, for the helicopter sits upon its landing gear, not the tow bar.

Pl. Mem. at 14. As between these arguments, the Court finds Wallenius's stronger. The Court is unpersuaded by the distinction that Bristow urges between what the vehicle (yacht or helicopter)

6

sits upon. To the extent that both cradle and tow bar are specialized pieces of equipment used to carefully maneuver an awkwardly shaped vehicle onto a vessel, the cradle analogy is apt. This supports viewing the helicopter here as a "package" rather than as a good or set of goods not shipped in packages.

The Court's assessment that the helicopter is best viewed as a "package" is not, however, decisive here. That is because, even if the Court had found, with Bristow, that the proper measure was a CFU, the Court would have found that the helicopter constitutes only one CFU. That outcome is clear from the face of the bill of lading. Under "No. of units or packages," and alongside the goods described as "AW139 CIVIL HELICOPTER, USED," it recites "1." JSF Ex. B. It then separately lists three other units or packages, two of which consist of a "MAIN ROTOR BLADE BOX," and the last of which consists of a "HORIZONTAL STABILIZER CRATE." *Id.* Below, summing up, it recites, following a line reading "Total no. of containers or packages received by the Carrier in words," the response: "Four Unit(s)." *Id.* This makes clear that the helicopter is a single unit.

Importantly, a provision in the bill of lading discusses the $500 per "package," or per CFU, limitation:

> If U.S. COGSA applies to the contract evidenced by this bill of lading, the Carrier's liability is limited to U.S. $500 per package, or for Goods not shipped in packages, per customary freight unit, unless a higher value is declared in the Declared Value box on the face of the bill of lading and a higher freight is paid. *Each unpackaged vehicle or other piece of unpackaged cargo on which freight is calculated, constitutes one customary freight unit.*

JSF Ex. C (emphasis added). Bristow, notably, acknowledges that it had a fair and reasonable opportunity to declare a higher value and pay a higher freight in order to opt out of the COGSA limitation. *See* Pl. Mem. at 12. Bristow further acknowledges that it did not do so. *See id.* The "Declared value" box on the bill of lading, which references the above clause, is blank. *See* JSF

7

Ex. B. This provision, too, undermines Bristow's argument that the applicable CFU is the unit "used to calculate the freight for the unpackaged helicopter," or the "revenue ton." Pl. Mem. at 12. That argument cannot be squared with the plain language of the bill of lading that a CFU is the piece of cargo *on* which freight is calculated.

In a 2010 case, Judge Koeltl addressed the same contractual provisions at issue here in the context of a dropped yacht case. His reasoning aptly captures this Court's analysis:

> The bill of lading defines a "package" as "the largest means used to prepare cargo for transportation, including but not limited to, a skid, pallet, Container, trailer, or carton." Immediately after the incorporation of COGSA in the bill of lading, it states that "[e]ach unpackaged vehicle or other piece of unpackaged cargo on which freight is calculated, constitutes one customary freight unit. The bill of lading lists the number of units o[r] packages as 1, and keys the number of units to clause 10, the liability limitation clause of the bill of lading. This language, on its face, limits the defendants' liability to $500 for the yacht in a cradle. Either the yacht is considered one package, or it is unpackaged but nevertheless constitutes one customary freight unit. Under either scenario, liability is no more than $500.

*St. Paul Travelers Ins. Co. v. M/V MADAME BUTTERFLY*, 700 F. Supp. 2d 496, 508–09 (S.D.N.Y. 2010).

So, too, here. Regardless whether the helicopter with tow bar is viewed as a "package" or as a CFU, the Court holds, the bill of lading limits Wallenius' liability under COGSA to $500. Future shippers seeking to avoid such a limitation for a singular, valuable item such as a helicopter or yacht would do well to consider opting out of the limitation, declaring a higher value, and paying a correspondingly higher freight.

## CONCLUSION

For the foregoing reasons, the Court grants Wallenius' motion for partial summary judgment. The Clerk of Court is respectfully requested to terminate the motion pending at Dkt. 27. The parties are directed to file a new case management plan consistent with the Court's individual rules by March 12, 2019.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: February 28, 2019
      New York, New York